# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re<br><br>SANDRA WATKINSON,<br><br>                       **Debtor**<br>_____<br><br>SANDRA WATKINSON,<br><br>                  **Plaintiff**<br><br>v.<br><br>STATEBRIDGE COMPANY, LLC,<br>CHRISTIANA TRUST, A DIVISION OF<br>  WILMINGTON SAVINGS FUND<br>  SOCIETY, FSB, NOT IN ITS INDIVIDUAL<br>  CAPACITY BUT SOLELY AS OWNER<br>  TRUSTEE ON BEHALF OF RBSHD<br>  2013-1 TRUST,<br>DISTRESSED CAPITAL MANAGEMENT,<br>  and<br>URBAN LEAGUE OF SAN DIEGO<br>  COUNTY,<br><br>               **Defendants** | **Chapter 13**<br>**Case No. 18-12721-FJB**<br><br><br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 19-1071** |

## <u>MEMORANDUM OF DECISION</u>

In the matters before the Court, chapter 13 debtor Sandra Watkinson (the "Debtor") objects to

the secured claim filed by Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its

Individual Capacity but Solely as Owner Trustee on Behalf of RBSHD 2013-1 Trust ("Christiana") and, in

the above-captioned adversary proceeding, asserts counterclaims against Christiana and related claims

against Statebridge Company, LLC ("Statebridge"; together with Christiana, "the Defendants" [1]), a

---

[1] In the adversary proceeding, the Debtor also seeks relief against two further defendants, neither of whom has
answered the complaint and against whom a motion for default judgment is pending.  These defendants and the

mortgage servicer who serviced the mortgage loan that forms the basis of Christiana's claim. Because of

substantial overlap between the bases for the objection and the counts in the adversary proceeding, the

Court consolidated the objection to claim and the adversary proceeding for trial.  After a trial and for the

reasons set forth below, the Court will, by separate orders, dismiss the remaining counts against the

Defendants and overrule the Debtor's objection to claim. This memorandum of decision constitutes the

findings of fact and conclusions of law required by Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R.

Bankr. P. 7052

**PROCEDURAL HISTORY**

On July 16, 2018, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code,

thereby commencing the bankruptcy case in which these proceedings arise.  Christiana timely filed in

this case proof of claim No. 5-1, asserting a claim in the amount of $340,670.84, secured by a mortgage

on the real property that is the Debtor's principal residence ("the Property").  As attachments to its

proof of claim, Christiana filed with the claim (i) the promissory note on which the claim is based,

together with an endorsement and two note alonges evidencing endorsement of the note from the

original payee/holder, Countrywide Bank, FSB, first to the Secretary of Housing and Urban Development

("HUD"), then from HUD to RBS Financial Products, Inc., and then from RBS Financial Products, Inc.to

Christiana, and (ii) the mortgage securing the promissory note, including evidence of its perfection (a

recording stamp), together with four assignments of the mortgage from the original mortgagee,

Mortgage Electronic Registration Systems, Inc., ultimately to Christiana.

On June 17, 2019, the Debtor filed the complaint commencing the present adversary

proceeding.  The complaint is in part an objection to Christiana's claim and in part an assertion of claims

---

relief sought against them are not the subject of this memorandum of decision. The motion for default judgment
will be addressed separately.

against Christiana and its servicer, Statebridge.[2]  On August 25, 2020, the Debtor moved for leave to amend her complaint to add claims against two new defendants.  That motion was granted, and the Debtor filed an amended complaint.[3]

The amended complaint asserts four counts against one or both of the Defendants. In Count I, the Debtor seeks damages against both Christiana and Statebridge for violation of provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq*., concerning the obtaining of forced place insurance on the Property.  In Count II, the Debtor seeks damages against both Christiana and Statebridge for violation of MASS. GEN. LAWS ch. 93A.  In Count III, the Debtor objects to Christiana's proof of claim, asking that it be disallowed on the basis that Christiana does not hold the promissory note or own the mortgage on which its claim is predicated.  And in Count VI, the Debtor seeks damages against Statebridge (not also Christiana) for another violation of MASS. GEN. LAWS ch. 93A.[4]

On September 4, 2019, the Court issued a pretrial and scheduling order, which required that all discovery be completed by December 3, 2019 and that a joint pretrial memorandum be filed by January 2, 2020.  On December 2, 2019, in allowing an unopposed motion by the Debtor, the Court extended the discovery deadline to February 3, 2020; and the joint pretrial memorandum became due on March 4, 2020.  When the deadline for the joint pretrial memorandum was not complied with, the Court issued an order to show cause why the adversary proceeding and objection to claim should not be dismissed for nonprosecution.  The Debtor responded by asking that the discovery period and other deadlines be further extended, citing the pandemic and an illness in her counsel's family, which illness was the same cause she had stated in support of the prior extension of the pretrial deadlines. The Defendants agreed

---

[2] See Fed. R. Bankr. P. 3007(b) ("A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.").
[3] The motion sought leave to amend only by adding claims against new defendants.  It did not seek leave to amend the complaint as against the existing defendants, Christiana and Statebridge, and no such leave was granted.
[4] The Count VI claim against Statebridge was added without leave of court, the Debtor having sought leave to amend only by adding two new defendants, not by adding new counts against the existing defendants.

only to a limited extension of the deadlines and for limited purposes.  Because the pandemic shutdown

had begun only after the March 4, 2020 deadline in the pretrial memorandum and the discovery period

had expired well before the pandemic started, the court denied the motion to extend the deadlines and

scheduled the matter for trial, but the court did not dismiss the adversary proceeding or overrule the

claim objection for nonprosecution. It appears that no or little discovery was accomplished in these

matters.

On July 24, 2020, in the main bankruptcy case, the Debtor filed her objection to Christiana's

proof of claim (the "Objection").  The Objection states four bases of objection.  One of these, the third,

is essentially duplicative of the objection to claim articulated in Count III of the amended adversary

complaint.  And the fourth basis of objection, which objects to unspecified "excessive fees" in

Christiana's claim, is based in part on the alleged RESPA violations that form the basis of Count I of the

amended adversary complaint.  Because of substantial overlap between the bases for the Objection and

the counts in the adversary proceeding, the Court consolidated the objection to claim and the adversary

proceeding for trial.

These matters were ultimately scheduled for trial on March 10, 2021.  On March 9, 2021, in the

evening and after the court had closed for business, the Debtor filed two motions in limine, four

proposed exhibits totaling over fifty pages, and a memorandum of law by which the Debtor essentially

sought a disposition of these matters in her favor.  Leave to file these motions and other submissions

was neither sought nor permitted by the pretrial order in place in the case.  Consideration of the

submissions well after the close of business on the night before the trial would have denied the

Defendants any degree of due process and denied the court an opportunity to review the submissions.

Accordingly, the Court had to either postpone the trial or exclude the unauthorized filings.  Given that

this is a chapter 13 case in which the Debtor was by then proceeding on a confirmed sixty-month plan

that was already more than half completed, making time essential, the Court decided to strike the unauthorized filings.

After the trial the parties filed proposed findings of fact and conclusions of law. The proposed findings and rulings of the Debtor, however, bore little resemblance to the evidence adduced at the trial and were largely incomprehensible. The Court therefore directed the parties to appear for closing arguments to determine what the Debtor believed had been established by the evidence and what counts she was proceeding on. Those arguments proved illuminating.

First, the Debtor clarified that she is no longer seeking judgment on Count VI. I therefore deem this count withdrawn, leaving only Counts I, II, and III for decision.

Next, the Court reviewed each remaining count with the parties. As to Count I, which seeks relief for violation of RESPA, initially the Debtor clarified that her claim was limited to an allegation that the Defendants violated RESPA § 2605(k)(1)(A), (B), and (C), because Statebridge, as servicer of her loan, had obtained and maintained force-placed flood insurance on her home, and passed the premiums on to her, in violation of § 2605. Finally, she clarified that she was seeking statutory damages of $2,000 in the event she recovered judgment on Count I.

Later in her arguments on Count I, the Debtor attempted to add a second theory of liability under RESPA, for an alleged failure of Statebridge to send the Debtor periodic mortgage statements during the pendency of her bankruptcy case, what counsel described as a violation of "12 U.S.C. § 1026.41."[5] She had also sought rulings of law for this alleged violation in her proposed conclusions of law. She conceded, however, that she had not articulated this basis for relief in her amended complaint. The Defendants objected to the addition of this new theory after the close of the trial. I will address this issue—whether the Debtor may proceed on a basis of relief announced for the first time after trial—in my rulings on Count I below.

---

[5] There is no subsection by this number in 12 U.S.C. § 1026.

As to Count II, for violation of MASS. GEN. LAWS ch. 93A, § 2, the Debtor clarified that the sole

basis was her contention that the Defendants' conduct in obtaining and maintaining force-placed flood

insurance on the Property at the same time as she had herself obtained flood insurance was an unfair or

deceptive act under the statute. She also clarified that she was seeking a judgment under Count II in the

amount of $2,000, trebled to $6,000 if she proved that the Defendants acted willfully.

As to Count III, she clarified that her "standing" argument was premised exclusively on her belief

that Christiana no longer held the note and mortgage on the Property and thus could not file and

maintain a claim relating to it.

Finally, although the Debtor alleged in the amended complaint and at the trial that Statebridge

violated unspecified regulations of the Department of Housing and Urban Development by failing to

offer and/or accept reasonable forbearance arrangements to avoid foreclosure, she did not assert a

numbered count for relief for this violation in either the original complaint or the amended complaint.

In addition, she did not seek findings or rulings for any such violation in her proposed findings and

conclusions, did not mention such a violation in her closing argument, and did not answer Defendants'

argument in closing that she had not established any such violation because the evidence established

that the note in question was not held or guaranteed by HUD during the time the loan was serviced by

Statebridge. For those reasons, I consider any demand for relief for this alleged violation of HUD

regulations to be waived.

**JURISDICTION**

The matters before the Court include an objection to claim, which includes not only those bases

of objection asserted in the Objection to Claim filed in the bankruptcy case, but also those parts of the

amended adversary complaint that assert objections to claim, including Count III. Subject to exceptions

not applicable here, the bankruptcy jurisdiction of the district courts extends to "all civil proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). An objection to

claim arises not only in a bankruptcy case but under title 11 (the Bankruptcy Code), see 11 U.S.C. §

502(b) (authorizing court to adjudicate objections to claims), and it concerns and relates to the

distribution of the assets of the estate. It therefore falls squarely in the bankruptcy jurisdiction

conferred on the district courts by § 1334(b) and, pursuant to 28 U.S.C. § 157(a), referred by the district

court for this district to the bankruptcy court for this district by a standing order of reference. Moreover,

objections to claims are core proceedings within the meaning of § 157(b)(1) and (2). See 28 U.S.C. §

157(b)(2)(B) (core proceedings include allowance or disallowance of claims against the estate).

Accordingly, the Court may hear and finally determine them. 28 U.S.C. § 157(b)(1).

The matters before the Court also include claims by the Debtor against Christiana, a claimant, in

Counts I and II of the amended adversary complaint. These counts do not arise under the Bankruptcy

Code but are at least related to a bankruptcy case because the recovery on those claims (if they are

successful) could be setoff against, and thus reduce, Christiana's claim in the case, or otherwise help

fund the plan.  They accordingly are "civil proceedings . . . related to" a case under title 11 within the

meaning of § 1334(b). The Debtor, Christiana, and Statebridge have consented under 28 U.S.C. §

157(c)(2) to this Court's entry of a final order as to each issue in dispute that is within this Court's

subject matter jurisdiction.[6]  Accordingly, it is unnecessary for the Court to determine whether these

counts are core proceedings.

The matters before the Court also include claims by the Debtor against Statebridge in Counts I

and II of the amended adversary complaint.  Statebridge is not a claimant in the case, and these claims

against Statebridge, both for damages, are less substantially related to this bankruptcy case than the

claims against Christiana.  Still, because recovery on these claims could help fund the plan in this case,

the claims satisfy the well-accepted test for related-to jurisdiction under § 1334(b), as set forth in *Pacor,*

*Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) (related to jurisdiction extends to any matter that

---

[6] See their Rule 26(f) Discovery Conference Certification and Written Report, doc. #19 in the Adversary Proceeding.

conceivably may have an effect on the estate in bankruptcy).  The claims against Statebridge accordingly

are within the bankruptcy court's subject matter jurisdiction.  They are not core proceedings, but as the

Debtor and Statebridge have both consented to this Court's entry of final judgment as to matters within

the Court's subject matter jurisdiction, this Court has authority under § 1334(c)(2) to enter final

judgment on them.

**FINDINGS OF FACT**

At the trial, each party presented the testimony of one witness, and three exhibits were

admitted into evidence. On the basis of the evidence presented, I hereby make the following findings of

fact.[7]

On April 24, 2009, the Debtor borrowed $228,375 from Countrywide Bank, FSB, to which, on

that same date, she delivered a promissory note (the "Note") in that principal amount and granted a

mortgage on the Property (the "Mortgage") to secure the Note.  The Mortgagee was identified as

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Bank, FSB.  By a

special endorsement on the second page of the Note, Bank of America, N.A., as successor by merger to

Countrywide Bank, FSB, endorsed the Note to the order of the Secretary of Housing and Urban

Development ("HUD").  Next, by an allonge attached to the Note, HUD further endorsed the Note to the

order of RBS Financial Products, Inc. ("RBS").  And then, by a second allonge attached to the Note, RBS

further endorsed the Note to the order of Christiana.

---

[7] The Debtor asks that the Court include in its findings all facts alleged in the amended complaint that Christiana and Statebridge (neither of whom answered the amended complaint) did not answer in their answers to the original complaint.  The Court declines to do so for two reasons.  First, nowhere in her proposed findings does she itemize or specify the allegations in question.  Second, and more fundamentally, the Court did not allow the Debtor to amend the complaint as against the original defendants, only to add two new defendants and allegations concerning the counts to be added against them.  There should be no allegations or counts in the amended complaint against the original defendants that were not simply carried forward from the original complaint; and if that were the case, there would be no allegations in the amended complaint that the original defendants did not answer in response to the original complaint.

The Mortgage, too, was repeatedly assigned.  First, on July 5, 2011, MERS assigned the Mortgage to BAC Home Loans Servicing, LP. Next, on January 3, 2014, Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, further assigned the Mortgage to HUD.  Next, on January 30, 2014, HUD further assigned the Mortgage to RBS.  Next, on June 17, 2014, RBS further assigned the Mortgage to Christiana.

As of the commencement of this bankruptcy case and the date on which Christiana filed its proof of claim herein, Christiana was the holder of the Note and the owner by assignment of the Mortgage.

The servicing rights with respect to the loan have also been transferred several times over the course of the loan.   Statebridge serviced the loan from August 2015 through July 19, 2020.  Effective July 20, 2020, during this chapter 13 case, the servicing rights on the loan were transferred to Distressed Capital Management ("DCM") and its specialty subservicer, Urban League of San Diego County and Statebridge ceased to be the servicer.  On July 3, 2020, Statebridge sent a letter to the Debtor informing her of this transfer of servicing rights.

The second paragraph of this letter states:

> Please be assured that transactions of this type are common among financial institutions and have absolutely no bearing on your credit standing.  The assignment, sale and transfer of your mortgage loan does not affect any term or condition of the mortgage instruments, other than the terms directly related to the servicing of your loan.

The Debtor contends that the second sentence of this paragraph, the subject of which is "the assignment, sale and transfer of your mortgage loan," is evidence that Christiana has transferred the Note and Mortgage, and therefore, as of the date of this letter, had ceased to hold the Note and own the Mortgage.  This is the only evidence that the Debtor cites of a transfer of the mortgage loan.

I do not read the sentence in question as evidence that the loan itself, as opposed to the servicing rights, had been transferred.  There is no mention in the letter prior to (or following) the sentence in question of a transfer of the loan itself (much less an indication of who transferred it to whom and when).  Rather, the entire subject of the letter is the "assignment, sale, and transfer *of servicing rights*" (emphasis added).  The most natural reading of the words in question, "the assignment, sale and transfer of your mortgage loan," is as a shorthand way of saying "the assignment, sale and transfer of the servicing rights to your mortgage loan," which was the entire subject of the letter to that point. Certainly that is the most probable intent of Statebridge in writing those words. Even if they are construed as evidence of a transfer of the loan itself (the Note and Mortgage), the few words in issue do not specify the transfer to which they refer, neither the transferor, the transferee, or the date of the transfer.  These words are not plausible evidence of a further transfer by Christiana to a third party. This evidence, such as it is, is not substantial evidence of the transfer of the loan itself, as opposed to the servicing rights.  I find no credible evidence that Christiana has transferred the loan or that, for any reason, Christiana no longer holds the Note and owns the Mortgage.

The Debtor testified at the trial. Her direct testimony, though often unintelligible, nonetheless permits some findings. The Debtor fell behind on mortgage payments to Statebridge as a result of a precipitous increase in her flood insurance premiums and of job loss.  When Statebridge commenced foreclosure proceedings, she filed a voluntary petition under chapter 13 on July 16, 2018.

The Debtor alleges that the Defendants obtained force-placed insurance when she lost her coverage and that the Defendants did not cancel this insurance when she was able to obtain her own coverage.  The Debtor's testimony concerning when she obtained her own insurance was hopelessly incomprehensible. She testified, and I find, that she received one written notice from Statebridge

informing her that it was required to arrange force-placed insurance on the Property because she had

failed to maintain such insurance.  She also testified, and I find, that she eventually provided Statebridge

with evidence that she had obtained flood insurance, but she did not specify when that occurred, and

she did not offer any documentary evidence of this notification or of the date of its effectuation.

Because her testimony on the issue of flood insurance was confused (she appeared unprepared to

testify coherently), I did not find her credible.

Stefanie Jeffries testified for the Defendants.  She is a post-transfer auditor for Statebridge and

previously served as director of bankruptcy and foreclosure at Statebridge. I found Ms. Jeffries to be a

credible witness. Ms. Jeffries studied the Debtor's loan file in detail and determined the history of

Statebridge's involvement.

Ms. Jeffries testified, and I find, that the Debtor's loan was never insured by HUD during the

period that Statebridge serviced the loan.

Ms. Jeffries authenticated Christiana's proof of claim, No. 5-1, including its exhibits.  The proof

of claim, complete with exhibits, was admitted into evidence without objection. Statebridge, as servicer

for Claimant, had arranged for the filing of the proof of claim on behalf of Christiana. The proof of claim

was filed by an attorney acting on behalf of Christiana.  To be clear, proof of claim No. 5-1 is filed on

behalf of Christiana and Christiana alone.  Where the proof of claim form asks the creditor to indicate

"other names the creditor used with the debtor," Christiana indicated "Statebridge Company LLC."  This

did not and does not make Statebridge the claimant or a claimant.  Statebridge is also identified in the

proof of claim as the entity to which notices and payments to Christiana should be sent.

Among the exhibits attached to the proof of claim was a copy of a promissory note in the face

amount of $228,375.00, dated April 24, 2009, signed by the Debtor, and delivered to Countrywide Bank,

FSB, as lender, which appears to be the Note.  The Note referred to the Property and a mortgage to be

executed with respect to the Property.  Ms. Jeffries traced transfers of the Note through a series of

holders ultimately to Christiana and supported that testimony with a Note Allonge.  She further testified

credibly that she was unaware of evidence of any further transfer of the Note and Mortgage by

Christiana through the date of the termination of Statebridge's servicing rights, June 3, 2020; after that

date, she and Statebridge have no further knowledge of the fate of the Note and Mortgage.

When Statebridge assumed servicing rights in August 2015, it determined that the Debtor was in

arrears on her obligations under the Note.  Using an outside insurance specialist, Statebridge also

reviewed the status of insurance coverage on the Property as of August 2015.  Through the outside

specialist, Statebridge determined that there was no evidence of either flood or hazard insurance in

place at that time.  This resulted in Statebridge's instituting a "letter cycle" to the Debtor asking for such

evidence, commencing with the letter of November 2015 that the Debtor conceded she received.

Statebridge then followed with two other notices of failure to provide evidence of insurance, the last of

which informed the Debtor that because "we have not heard from you, we are purchasing a policy on

your behalf to insure the property." Eventually, but at a date not in evidence, the Debtor did respond

with evidence that she had obtained insurance, which caused Statebridge to cancel the force-placed

policy it had acquired.

**ANALYSIS**

**The Objection to Proof of Claim**

In the Debtor's bankruptcy case, Christiana filed proof of claim No. 5-1, asserting a secured claim

in the amount of $340,670.84, secured by a mortgage on the Property. The Debtor has objected to this

claim, asserting four grounds of objection.

The burdens with respect to proofs of claim were summarized by Judge Somma:

> A proof of claim executed and filed in accordance with the Federal Rules
> of Bankruptcy Procedure constitutes prima facie evidence of the validity
> and amount of the claim. FED. R. BANKR. P. 3001(f); *see also Juniper
> Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925
> (1st Cir. 1993). In order to rebut this prima facie evidence, the objecting
> party must produce "substantial evidence." *United States v. Clifford (In*

> *re Clifford)*, 255 B.R. 258, 262 (D. Mass.2000); *Hemingway Transport*,
> 993 F.2d at 925. If the objecting party produces substantial evidence in
> opposition to the proof of claim and thereby rebuts the prima facie
> evidence, the burden shifts to the claimant to establish the validity of its
> claim. *Hemingway Transport*, 993 F.2d at 925 ("Once the trustee
> manages the initial burden of producing substantial evidence . . . the
> ultimate risk of nonpersuasion as to the allowability of the claim resides
> with the party asserting the claim."). Where the proof of claim is not
> filed in accordance with the Federal Rules of Bankruptcy Procedure, the
> proof of claim does not constitute prima facie evidence of the validity
> and amount of the claim, and therefore the burden of proof rests at all
> times on the claimant.
>
>      In order for a proof of claim to be executed and filed in
> accordance with the Federal Rules of Bankruptcy Procedure, it must
> satisfy (among other things) two requirements set forth in Rule 3001
> itself. First, "when a claim ... is based on a writing, the original or a
> duplicate shall be filed with the proof of claim." FED. R. BANKR. P.
> 3001(c). Second, "[i]f a security interest in property of the debtor is
> claimed, the proof of claim shall be accompanied by evidence that the
> security interest has been perfected." FED. R. BANKR. P. 3001(d).

*In re Long*, 353 B.R. 1, at 13 (Bankr. D. Mass. 2006). The "substantial evidence" that the objecting party

must produce in order to rebut the claim's prima facia validity is "evidence which, if believed, would

refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Everett*, 2013

WL 3757283, at *5 (Bankr. D. Mass. July 15, 2013); *In re Alleghany International, Inc.*, 954 F.2d 167, 173-

174 (3d Cir. 1991). This means that an "'objector must produce evidence equal in force to the prima

facie case.'" *Tracey v. United States (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (quoting *In re

Allegheny Int'l, Inc.*, 954 F.2d at 173).

As to each basis of objection, the claimant's burden of establishing the validity of its claim is not

one of starting from scratch.  Rather, in view of the prima facie validity of the claim, the claimant's

burden of ultimate persuasion (answering an objection supported by sufficient evidence) is a burden of

persuasion only as to the particular objection, of establishing that the defect alleged in the objection

either does not exist or is no defect.

I turn now to the four grounds of objection.

### i.   Failure to Attach Writings

As her first basis of objection, the Debtor states: "The proof of claim does not comply with

Federal Rule of Bankruptcy Procedure 3001(c)(1) because although the claim is alleged to be based upon

writings, a copy of the complete chain of writings is not attached to the proof of claim."  Rule 3001(c)(1)

states: "Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in

property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with

the proof of claim."  Fed. R. Bankr. P. 3001(c)(1).  The proof of claim in question *does* include copies of

writings on which the claim is based:  the promissory note; alonges and endorsements showing its

transfer from the original note holder, Countrywide Bank, FSB, through intermediate holders and

ultimately to Christiana; and a series of assignments of the mortgage from the original mortgagee,

Countrywide Bank, FSB, again through intermediate assignees and ultimately to Christiana. The Debtor

bore the initial burden of submitting substantial evidence that there exists a writing on which the claim

is based that is not attached to the proof of claim.  She has failed to do so.  Accordingly, I conclude that

the claim retains its prima facie validity,[8] and this basis of objection must be overruled.

### ii.   Postpetition Interest

As her second basis of objection, the Debtor states that "[t]he proof of claim should be

expunged to the extent that it is attempting to obtain post-petition interest in violation of section

502(b)(2) of the Bankruptcy Code."  The Debtor did not address this basis of objection in her proposed

findings and conclusions.[9]  Accordingly, I deem this basis waived.

---

[8] In order to enjoy prima facie validity, a proof of claim must include, in addition to copies of the writing required by Fed. R. Bankr. P. 3001(c)(1), "evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d). The proof of claim does include such evidence, and the Debtor does not contend otherwise.  I conclude that the proof of claim was filed in all material respects in accordance with the Federal Rules of Bankruptcy Procedure and therefore constitutes prima facie evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).

[9] This objection is perplexing.  The Debtor has proposed and obtained confirmation of a chapter 13 plan under which she has committed herself, under 11 U.S.C. § 1322(b)(5), to curing her prepetition arrearage to Christiana and maintaining postpetition payments to Christiana for the duration of her plan.  The postpetition maintenance payments include accruing interest.

### iii.   Chain of Title

As her third basis of objection, the Debtor contends that Christiana has failed to prove its "standing" to enforce the note and mortgage that form the basis of its claim; that is, it has not proven the chain of title showing that Christiana is the present holder of the promissory note and owner of the mortgage on which the claim is based. [10]   The Debtor bore the initial burden of submitting substantial evidence that the present holder of the promissory note and owner of the mortgage are an entity other than Christiana.   She has failed to do so.   Accordingly, I conclude that the claim retains its prima facie validity, and the objection must be overruled.

Even if the evidence adduced at trial were construed as substantial evidence, such that the prima facie validity of the claim were overcome, Christiana adduced evidence at trial by which it has carried its burden of establishing that it is in fact the present holder of the Note and owner of the Mortgage.   Ms. Jeffries authenticated the proof of claim filed by Christiana and its exhibits.   Among the exhibits attached to the proof of claim was a copy of the promissory note on which the claim is based, signed by the Debtor and delivered to Countrywide Bank, FSB, as lender.   The Note referred to the Property and a mortgage to secure the Note.   Ms. Jeffries and the exhibits traced endorsements of the Note through a series of holders and ultimately to Christiana and traced assignments of the Mortgage from Countrywide Bank, FSB, through a series of assignees and ultimately to Christiana.   Neither party adduced any evidence that the Note or Mortgage was further transferred.   Accordingly, if the burden

---

[10] The Debtor characterizes this issue as one of standing, because she contends that Christiana does not own the proof of claim it seeks to enforce, and therefore Christiana is effectively seeking to enforce it for a third party, without any real stake of its own in the outcome.  This would properly be viewed as presenting an issue of standing if Christiana were here attempting to enforce the Note and Mortgage for another, and did not itself purport to hold the Note and own the Mortgage. But that is not the case here.  Christiana filed the proof of claim in its own name and purports to hold the Note and own the Mortgage on which it is based.  Where the underlying note and mortgage are not originally in the claimant's name, the claimant must show, *as part of its case in chief*, that it presently holds the note and owns the mortgage. If it does not do so, the claim must be disallowed.  There would then be no residual issue of whether the claimant may be permitted to prosecute the claim for the benefit of whatever entity does hold the note and own the mortgage; the claimant is not here seeking to do that.  In short, despite similarities, the present issue is not one of standing.

has shifted to Christiana, I conclude that Christiana has carried its burden of proving by a preponderance

of the evidence that it was the holder of the Note and owner of the Mortgage at the time that the proof

of claim was filed on September 24, 2018, and indeed through the date of trial.  Therefore, this basis of

objection must be overruled.

   **iv.   Excessive Fees**

   As her fourth and last basis of objection, the Debtor states: "[Christiana] has charged excessive

fees, which include but are not limited to, the imposition of force place[d] insurance with a prohibitively

expensive premium, and excessive attorneys' fees." Though the proof of claim included a detailed

accounting of all charges to the account from November 1, 2013 through the date of the bankruptcy

filing in July 2018, the Debtor did not in her objection identify the particular charges she contends are

excessive, the amount she contends is excessive, or the reason why any particular charge is excessive.

Accordingly, I conclude that this objection fails to put any part of the claim in dispute.

   In addition, the Debtor bore the initial burden of submitting substantial evidence that Christiana

has charged excessive fees.  She failed to do so.  She neither cited any particular fees as excessive or

unjustified in any way nor adduced evidence tending to place any fees in doubt.  The Debtor did contend

that Christiana should not have charged her for the force-placed insurance it purchased for the

mortgaged property, but not because these charges were excessive.  Rather, her contention was that

Christiana had not satisfied the statutory notice prerequisites to properly passing these costs on to the

borrower, and that it failed to discontinue its own insurance when she notified Christiana that she had

obtained insurance of her own. The Debtor did not submit substantial evidence to support this

argument.  Therefore, the claim retains its prima facie validity, and this basis of objection must be

overruled.

   Even if the evidence were construed to have constituted substantial evidence of "excessive

fees" for force-placed insurance, I have found, in conjunction with Counts 1 and 2 of the Adversary

Proceeding, that Christiana has shown by a preponderance of the evidence that the requisite notice was given before Christiana obtained force-placed insurance, and that the Debtor has not proven that she gave notice to Christiana that she had obtained insurance as of any date certain.  Accordingly, even if these alleged failures are viewed as a reason why the Debtor here contends the fees that form part of Christiana's claim are excessive, I find that Christiana has carried its burden of answering this basis of objection.

Regarding her argument that some attorney's fees that constitute part of Christiana's claim are excessive, the Debtor has failed to carry her initial burden of adducing substantial evidence to overcome the prima facie validity of the claim.  She has failed even to adduce proposed findings and conclusions on this basis of objection.

For all these reasons, this fourth basis of objection must be overruled.

**v.    Untimeliness**

I have found no merit in the four bases of objection advanced by the Debtor.  I would further overrule her objection as untimely.  The local rules of this court require that objections to claim be served and filed within thirty days after the deadline for filing proofs of claim. See MLBR App 1, Rule 13-13(g) ("Objections to claims shall be served and filed with the Court within thirty (30) days after the deadline for filing proofs of claim or within such additional time as the Court may allow upon the filing of a motion to extend time and for good cause shown.").  In this instance, the last of the proof of claim deadlines, the one for governmental entities, was January 14, 2019.  The deadline for Christiana's claim was months earlier.  The Debtor filed her objection on July 24, 2020.[11] She did not move to extend the time. Rule 13-13(g) further states: "Any claim to which a timely objection is not filed shall be deemed allowed and paid by the chapter 13 trustee in accordance with the provisions of the confirmed plan."

---

[11] The Debtor's adversary complaint is in part an objection to claim.  It was filed on June 17, 2019. Even if it is viewed as the operative objection to claim, it is still late by five months.

See MLBR App 1, Rule 13-13(g).  It follows that Christiana's claim is deemed allowed.  The Debtor has

neither sought nor advanced good cause for relief from this rule.

**The Amended Adversary Complaint**

   **Count I – RESPA Violations**

   I turn now to the amended adversary complaint. In Count I, the Debtor alleges that Statebridge

and Christiana are liable for violation of RESPA, 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41(a).  As noted

above, the Debtor clarified at closing argument that her claim was limited to an allegation that the

Defendants violated § 2605(k)(1)(A), (B), and (C), because Statebridge, as servicer for Christiana, had

obtained and maintained force-placed flood (and perhaps hazard) insurance on her home in violation of

the provisions of § 2605, because Statebridge, as servicer, failed to provide the notices required by §

2605 as a prerequisite to obtaining force-placed insurance and then failed to discontinue its force-

placed insurance upon receipt of evidence from her that she had obtained insurance of her own.  The

burden of proving each of these violations by a preponderance of the evidence is on the Debtor.

   Section 2605(k)(1) provides in relevant part as follows:

>  A servicer of a federally related mortgage shall not—
>
>  (A) obtain force-placed hazard insurance unless there is a reasonable
>  basis to believe the borrower has failed to comply with the loan
>  contract's requirements to maintain property insurance[.]

12 U.S.C.A. § 2605(k)(1)(A).  The Debtor seems to allege that under § 2605(k)(1)(A), Statebridge did not

have a "reasonable basis" to believe that the Debtor had failed to maintain insurance on the Property.

Regarding what constitutes such a reasonable basis, subsection 2605(l) states: "[a] servicer of a federally

related mortgage shall not be construed as having a reasonable basis for obtaining force-placed

insurance unless the requirements of this subsection have been met."  12 U.S.C. 2605(l).  "[T]he

requirements of this subsection" are set forth in paragraphs (A), (B), and (C) of § 2605(l)(1):

A servicer may not impose any charge on any borrower for force-placed insurance with respect to any property securing a federally related mortgage unless—

(A) the servicer has sent, by first-class mail, a written notice to the borrower containing--

> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;

(B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

(C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

12 U.S.C.A. § 2605(l)(1).

I find that Statebridge had a reasonable basis to obtain force-placed insurance for several reasons. First, when Statebridge took over the servicing responsibilities, it retained an outside insurance coverage specialist to determine whether the Debtor had the proper insurance in place. That specialist determined that the Debtor had not provided notice of the required insurance policies, causing Statebridge to begin a "letter cycle" whereby the Debtor was notified that force-placed insurance was going to be placed on her property. The Debtor acknowledged at trial that she received at least the first of these notices. Second, and more important, the Debtor testified that she in fact lost insurance

coverage at some unspecified point during the time the Note was being serviced by Statebridge and that

it took her several months to obtain replacement insurance.

While it is unclear, the Debtor appears to argue that Statebridge failed to terminate the force-

placed insurance even after the Debtor provided it with notice that she had obtained her own policy of

insurance.  Subsection 2605(l)(2) details the nature of the notice of insurance required from a borrower

to a servicer:

> A servicer of a federally related mortgage shall accept any reasonable
> form of written confirmation from a borrower of existing insurance
> coverage, which shall include the existing insurance policy number along
> with the identity of, and contact information for, the insurance company
> or agent, or as otherwise required by the Bureau of Consumer Financial
> Protection.

12 U.S.C. § 2605(l)(2). While the Debtor did testify that she provided notice that she had obtained

insurance coverage on her own, and Statebridge's witness acknowledged that such notice was

eventually received, the Debtor did not offer any evidence of the "written confirmation" required by §

2605(l)(2).  I therefore cannot determine when such notice was given or whether it complied with that

provision. Moreover, Statebridge established through an Annual Escrow Account Disclosure Agreement

attached to proof of claim 5-1 that it stopped the force-placed hazard insurance in May 2017 and the

force-placed flood insurance in August 2017. It was the Debtor's burden to prove that she provided the

required notice at an earlier time, and she has not met that burden.

While the Debtor's testimony was so muddled that I cannot be sure, she seems also to have

contended that Statebridge failed to send her the written notices that RESPA, at § 2605(l)(1)(A) and (B),

requires as a condition of imposing a charge on a borrower for forced place insurance. The burden is on

the Debtor to prove this alleged failure to send the required notice.

The statute requires two notices.  The first must be written, sent by first class

mail, and contain

(i) a reminder of the borrower's obligation to maintain hazard
insurance on the property securing the federally related
mortgage;
(ii) a statement that the servicer does not have evidence of
insurance coverage of such property;
(iii) a clear and conspicuous statement of the procedures by
which the borrower may demonstrate that the borrower already
has insurance coverage; and
(iv) a statement that the servicer may obtain such coverage at the
borrower's expense if the borrower does not provide such
demonstration of the borrower's existing coverage in a timely
manner[.]

12 U.S.C.A. § 2605(l)(1)(A).  The Debtor admitted that she received such a letter.  While neither party

offered a copy of this notice, the Debtor testified that she saw the letters that Statebridge said it sent,

admitted receiving the first of these, and does not contend that the first, or any of the letters, was

deficient in its content.  The statute then requires a second written notice, also by first-class mail, "at

least 30 days after the mailing of the notice under subparagraph (A) that contains all the information

described in each clause of such subparagraph."  12 U.S.C.A. § 2605(l)(1)(B). Statebridge adduced

credible evidence that it sent this letter, too, part of the "letter cycle" it initiated when it discovered that

it lacked evidence of hazard or flood insurance on the Property. The Debtor denied receiving a second

letter but then conceded that she really didn't know: "[i]t's been five years ago.  I am not sure. There's

been so much correspondence and things that have gone on during that period of time."  In short, the

Debtor is not confident that she did not receive the second notice and doesn't remember.  It was the

Debtor's burden to establish that the notices were inadequate, and she has failed to meet that burden.

For the foregoing reasons, I conclude that the Debtor has failed to carry her burden of

establishing a violation of the RESPA statute. Count I will accordingly be dismissed.

In her closing arguments on Count I, the Debtor attempted to add a second theory of liability

under RESPA, for an alleged failure of Statebridge to send the Debtor periodic mortgage statements

during the pendency of her bankruptcy case, which counsel described as a violation of "12 U.S.C. §

1026.41." Her attorney conceded in closing arguments that this count had not been pled in the

complaint or the amended complaint. The Defendants objected to the addition of this new theory at the

closing arguments.  I decline to allow this late-addition of a new theory for the following reasons.

The amendment of a complaint after trial is governed by Fed. R. Civ. P. 15(b)(2), made applicable

here by Fed. R. Bankr. P. 7015. Under Rule 15(b)(2), when an issue not raised in the pleadings is actually

tried, the Court may allow the amendment upon a finding that the opposing party consented, either

expressly or impliedly, to the issue's being tried.  Rule 15(b) is to be interpreted liberally to promote the

objective of deciding cases on their merits.  *See Brandon v. Holt*, 469 U.S. 464, 471 & n. 19 (1985).

"Federal Rule of Civil Procedure 15(b) allows an unpleaded claim to be considered when the parties'

conduct demonstrates their express or implied consent to litigate the claim."  *Antilles Cement Corp. v.

Fortuno*, 670 F.3d 310, 319 (1st Cir. 2012).

The Court may find implied consent when the party whose consent is required has actively

engaged in, or silently acquiesced to, the trial of the amended claim.  *See Fustolo v. Patriot Grp., LLC (In

re Fustolo)*, 896 F.3d 76, 84 (1st Cir. 2018). Implied consent may be found when opposing counsel fails to

object to the presentation of issues raised that are outside of the pleadings.  *Id.* (citing *Conjugal P'ship v.

Conjugal P'ship*, 22 F.3d 391, 400-01 (1st Cir. 1994)).  "However, the introduction of evidence directly

relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have

realized that a new issue was infiltrating the case." *Id.* (quoting *DCPB, Inc. v. City of Lebanon*, 957 F.2d

913, 917 (1st Cir. 1992)).  While the rule is to be construed liberally, the Court must protect the due

process rights of the opposing party and therefore may allow a late amendment only if the nonmoving

party will not suffer undue prejudice.  *Id.* (citing *Campana v. Eller*, 755 F.2d 212, 215 (1st Cir. 1985)).

The Defendants did not expressly consent to the trial of this new theory.  The issue then is

whether, by their conduct at trial, they *impliedly* consented to the trial of this theory.  I find that they did

not.  The Debtor does not contend that the issue was tried with the Defendants' implied consent, and I

find no juncture of the trial at which it should have been apparent to the Defendants that the Debtor

was proceeding on a new theory.  The evidence adduced on this issue amounted to a question or two as

to whether Statebridge had sent statements to the Debtor during the pendency of the case.  The

statements were, or might have been, relevant to the pleaded counts. The presentation of the Debtor's

testimony, by her own counsel on direct, was so meandering, confused, undeveloped, and unfocused

that it was hard at any given moment to see any direction in its development.  It would not have been

apparent to the Defendants—and certainly was not apparent to the Court—that the Debtor was

proceeding under a new theory under RESPA. Only a seer might have seen this coming, especially since

the alleged violation is of a technical regulation. Having concluded that the issue was not tried with the

Defendants' consent, express or implied, I decline to treat it as raised in the pleadings.  The Defendants

would be unfairly denied any semblance of due process by allowing the addition of this new theory after

trial.

There are other reasons to deny relief for this new theory.  First, the Debtor contends that the

conduct in question is a violation of "12 U.S.C. § 1026.41," but there is no section or subsection 1026.41

in title 12 of the United States Code.  Second, the Debtor went on to concede that she had no idea of

what damages might arise under this theory of liability. Even at this late juncture, the Debtor has failed

to articulate the basis in law for this count and the damages to which she contends she is entitled.

### Count II – MASS. GEN. LAWS Ch. 93A, § 2

To successfully state a claim under MASS. GEN. LAWS ch. 93A, § 2, a plaintiff must

establish:

> (1) that the defendant engaged in an unfair method of competition or
> committed an unfair or deceptive act or practice, as defined by G.L. c.
> 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money
> or property suffered as a result; and (3) a causal connection between the
> loss suffered and the defendant's unfair or deceptive method, act, or
> practice.

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (footnote omitted); see also

*477 Harrison Ave., LLC v. Jace Boston, LLC*, 477 Mass. 162, 171-172 (2017).  Courts have held that a loan

servicer's handling of relations between itself and a borrower can constitute a violation of chapter 93A when the conduct is an unfair or deceptive business practice in and of itself. *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 154 (D. Mass. 2014) and cases cited.

The Debtor clarified at the closing argument that the gravamen of her chapter 93A claim is twofold: (a) that Statebridge and Christiana violated the statute when they failed to cancel the force-placed insurance after they learned that the Debtor had obtained her own policy; and (b) that under RESPA, Statebridge was required to send three letters regarding force-placed insurance and that it failed to do so.

I first address the alleged failure to cancel the force-placed insurance policy after notice from the Debtor that she had obtained her own coverage, resulting in "overlapping" insurance policies.  This count fails because the Debtor did not carry her burden of proving when she sent the required written notice that she had obtained a policy under 12 U.S.C. § 2605(l)(2).  First, Statebridge's witness testified, credibly, that Statebridge eventually received proof of insurance and that it canceled the force-placed insurance upon such receipt.  Second, the Debtor conceded this issue when, at the closing argument, the Court asked Debtor's counsel, "I have no evidence [exhibits or testimony] concerning overlapping insurance policies, is that right?" and counsel responded, "I believe that is correct, your honor."  There is simply no proof that Statebridge failed to cancel the force-placed policy when it received notice of the Debtor's policy.

The Debtor's second basis of liability under chapter 93A—that Statebridge failed to send the letters required by RESPA subsection 2605(l)(A)—suffers the same fate.  As noted earlier, Statebridge's witness testified that it sent three letters regarding force-placed insurance to the Debtor as part of a "letter cycle," and the Debtor acknowledged receiving at least the first of these letters and could not remember whether she had received the second and third.  I found Statebridge's witness credible on this topic.  Again, the Debtor failed to carry her burden.

24

Based on the foregoing, the Debtor has not proven that Statebridge or Christiana engaged in an unfair act or practice as those terms are defined in Chapter 93A.  Accordingly, Count II will be dismissed as to each defendant.

**Count III – A Challenge to Christiana's Standing**

In Count III of the Amended Complaint, the Debtor seeks a declaration that "Christiana Does Not Have Standing and That the Proof of Claim 5-1 Is Therefore Null and Void and Should be Disallowed." This count is in essence an objection to Christiana's proof of claim, and it is in fact the same objection as was asserted as the third basis of objection in the Debtor's objection to Christiana's claim.  The objection requires no separate analysis here; the burdens are not different where the objection is asserted in an adversary complaint instead of in a simple objection to claim.  For the same reasons as are set forth above as to the third basis of the objection to claim, the objection set forth in Count III must be overruled.

**CONCLUSION**

For the above reasons, the Debtor's Objection to Proof of Claim will be overruled, claim No. 5-1 of Christiana will be allowed in full, and the counts in the amended complaint in the adversary proceeding against Christiana and Statebridge will be dismissed on their merits.  These orders will enter at the close of the adversary proceeding.

Date:  January 24, 2022

_____
Frank J. Bailey
United States Bankruptcy Judge